UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUN P. AGRAVANTE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 13 C 3540 |
| v. ) | |
| ) | Judge George M. Marovich |
| JOHN E. POTTER, POSTMASTER ) | |
| GENERAL OF THE ) | |
| UNITED STATES POSTAL SERVICE, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

After his employment was terminated, plaintiff Jun P. Agravante ("Agravante") filed suit against defendant John E. Potter, Postmaster General of the United States Postal Service ("defendant"). Defendant has filed a motion for summary judgment. For the reasons set forth below, the Court grants in part and denies in part defendant's motion for summary judgment.

**I.      Background**

Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. The Court enforces Local Rule 56.1 strictly. Facts that are argued but do not conform with the rule are not considered by the Court. For example, facts included in a party's brief but not in its statement of facts are not considered by the Court because to do so would rob the other party of the opportunity to show that such facts are disputed. Where one party supports a fact with admissible evidence and the other party fails to controvert the fact *with citation to admissible evidence*, the Court deems the fact admitted. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). This does not, however, absolve the party putting forth the fact of its duty to support the fact with admissible evidence. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir.

2012). Asserted "facts" not supported by specific pages of deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes are not considered by the Court.

The following facts are undisputed unless otherwise noted.

Plaintiff Agravante, an Asian man, began his second term of employment with the postal service in 1989, when the postal service hired him as a letter carrier in Wheeling, Illinois. His first term of employment began in 1986, but he was soon discharged for poor performance. After he filed a complaint, the postal service allowed him to resign, which meant he could apply again in the future for employment. He did.

In 1993, Agravante transferred to the Wood Dale Post Office. By 2005, Agravante's supervisor at Wood Dale was Kusum Puri ("Puri"). Prior to 2010, Puri never disciplined Agravante. The events that lead to this lawsuit began in late 2009.

In October 2009, James Bailey ("Bailey") filed an internal EEO complaint. Bailey alleged that Puri had discriminated against him on the basis of his race and sex. Agravante participated in Bailey's EEO complaint by providing a written statement in support of Bailey's claim.

About a year later, Agravante began having performance problems. In September 2010, Puri issued Agravante a letter of warning. The reason for the letter of warning was that Agravante had failed to scan mail at five locations and that he failed to take responsibility for his mistakes. A few months later, in January 2011, Puri suspended Agravante for seven days, because he delivered a piece of express mail to the wrong address. The postal service discovered the problem when it was notified by the customer who received the mail.

In June 2011, Marcus Collins (who was, by this time, a supervisor) suspended Agravante for 14 days. Collins signed the notice of suspension as the supervisor, and Puri, who had

become the Officer-in-Charge of the Wood Dale Post Office, signed the notice as the "Reviewing and Concurring Official." The reason for the suspension was that the postal service discovered that a package Agravante scanned and certified as delivered was still at the Wood Dale Post Office. Agravante's supervisors were not satisfied with Agravante's explanation, which was that he had accidentally scanned it and then forgot to deliver it.

Agravante, displeased with his fourteen-day suspension, filed an internal EEO complaint. Agravante's complaint was mediated on July 28, 2011. Agravante has put forth evidence (which defendant disputes) that, at the mediation, Puri stated that she was upset with Agravante because he had "turned his back on her" by providing written support for Bailey's EEO claim (back in October 2009) and had been ungrateful to her. At the mediation, the parties agreed to reduce the suspension from fourteen days to seven days.

Agravante was in trouble again in February 2012, when Collins suspended him for fourteen days. This time, Collins charged Agravante with failing to deliver a tub of priority mail before departing for a week of annual leave. Collins, as supervisor, signed the notice of suspension. Dawn Ellison, who was the Officer-in-Charge of the Wood Dale Post Office at the time, signed as the "Reviewing and Concurring Official."

In May 2012, Agravante and Puri had a conversation about headphones, but they disagree about the content of the conversation. The parties agree that, generally, the postal service allowed employees to use their headphones to listen to music while they worked. Agravante has put forth disputed evidence that on May 12, 2012, Puri told him that he could not listen to his headphones at work, because he was not listening to her service talks. Defendant has put forth evidence that Puri told Agravante he could not use his headphones *during* her service talks. At the time of the conversation, Agravante could see a white employee wearing

headphones. Two days later, Puri raised her voice to Agravante and accused him of failing to deliver a piece of certified mail.

On June 19, 2012, Collins issued Agravante a notice of removal (i.e., discharge). Collins, as Agravante's supervisor, signed the notice of removal. Puri, as Officer-in-Charge of the Wood Dale Post Office, also signed the notice as the reviewing and concurring officer. The reason for the notice of removal was discarding for destruction mail marked "return to sender." Neither Puri nor Collins witnessed Agravante put the mail in the discard tub. Agravante believes the mail may have fallen into his discard tub accidentally.

Agravante filed an internal EEO complaint and a grievance through his union. With respect to the grievance, the dispute resolution team sustained defendant's decision, explaining that "the Union did not provide any valid reasons for the grievant's actions and the grievant did act as charged." Still, the dispute resolution team recommended that Agravante be given one last chance. Defendant signed a last-chance agreement that reduced Agravante's punishment from discharge to a 30-day suspension. Because Agravante did not sign the last-chance agreement, Agravante lost his job, effective August 28, 2012.

Other letter carriers have been found to have discarded mail but have not been disciplined with discharge. Chuck Ventralla and Ed Scheriner (both white men), for example, were found to have improperly placed standard mail in a discard tub in July 2012. Defendant disciplined each with a "job discussion." LaTanya Rogers (a woman) was issued a letter of warning (which was later reduced to a "job discussion" during the grievance process) for twice placing standard mail in the discard tub. These others did not have the same history of infractions that Agravante had. Agravante has put forth no evidence of Chuck Ventralla's, Ed Scheriner's or LaTanya Rogers's histories of prior infractions.

After exhausting his internal remedies, Agravante brought his claims to this Court, and defendant moved for summary judgment.

## II.  Summary Judgment Standard

Summary judgment shall be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III.  Discussion

Agravante filed a three-count complaint. In Count I, Agravante alleges that defendant subjected him to a hostile environment and to disparate treatment on the basis of his race. In Count II, Agravante alleges that defendant subjected him to disparate treatment on the basis of his sex. In Count III, Agravante asserts that defendant retaliated against him due to his prior participation in conduct protected by Title VII of the Civil Rights Act of 1964.

### A.  Agravante's disparate treatment claims

In Counts I and II, respectively, Agravante claims that he was subjected to disparate treatment on the basis of his race and sex. Pursuant to Title VII of the Civil Rights Act of 1964, it "shall be an unlawful employment practice for an employer–(1) to fail or refuse to hire or to

discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). To be actionable as discrimination under Title VII, a difference in treatment must be material. *Minor v. Centorcor, Inc.*, 457 F.3d 632, 634 (7th Cir. 2006).

Agravante claims that he was discriminated against on the basis of his race and sex when defendant terminated his employment. Agravante does not argue that he has any direct evidence of discrimination on the basis of his race or sex. Instead, Agravante argues that he can defeat summary judgment using the indirect method. To make out a *prima facie* case of discrimination, a plaintiff must put forth evidence that: (1) he is a member of a protected class; (2) he was meeting the employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) a similarly-situated employee not in his protected class was treated more favorably. *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 979 (7th Cir. 2014). The "burden of establishing a prima facie case of disparate treatment is not onerous." *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). It requires a plaintiff to show that he was "rejected under circumstances which give rise to an inference of unlawful discrimination," and the "standard is not inflexible" because facts vary in different cases. *Burdine*, 450 U.S. at 253 and n.6. If plaintiff makes out a *prima facie* case of race or sex discrimination, defendant has the light burden of *articulating* a legitimate, non-discriminatory reason for the difference in treatment. *Alexander*, 739 F.3d at 979. If defendant does so, plaintiff has the burden to show that the proffered reason was merely a pretext for race or sex discrimination. *Id.*

Here, the Court will assume, without deciding, that plaintiff can make out a *prima facie* case of discrimination on the basis of sex and race. The infraction for which Agravante was discharged was discarding mail marked "return to sender." Agravante has put forth evidence that other employees outside of his protected classes engaged in the same infraction but were treated more favorably. For example, a woman, LaTanya Rogers, placed standard mail in a discard pile on two occasions. She was disciplined with a letter of warning, which was reduced to a "job discussion" during the grievance process. Two white employees, Chuck Ventralla and Ed Scheriner, placed standard mail in a discard tub in July 2012. Each was given a "job discussion," while Agravante was discharged.

Defendant has articulated a legitimate, non-discriminatory reason for the difference in treatment: the others did not have the history of infractions that Agravante had. Agravante had been disciplined in the past. To survive summary judgment, Agravante must put forth evidence that the explanation is a pretext for discrimination. A pretext is a dishonest explanation, rather than an error. *See Bodenstab v. County of Cook*, 569 F.3d 651, 657 (7th Cir. 2009). To show pretext, Agravante "must establish that the explanation is a lie, which permits a jury to infer that the tale has been concocted to conceal an unlawful truth. It is not enough to demonstrate that the employer was mistaken, inconsiderate, short-fused, or otherwise benighted; none of those possibilities violates federal law. Poor personnel management receives its comeuppance in the market rather than the courts." *Yindee v. CCH Inc.*, 458 F.3d 599, 602 (7th Cir. 2006) (internal citations omitted).

Agravante's pretext argument is not compelling. Agravante argues that defendant's reason must be a lie, because defendant treated other employees more favorably. This is

undisputed, but what Agravante must show is not that a difference in treatment existed but rather that the *reason* for the difference in treatment is a pretext for discrimination. Defendant's reason is that the other employees had not engaged in prior misconduct to the same extent as Agravante. Agravante had previously been disciplined with a *letter of warning* in January 2011 for failing to scan mail; a *seven-day suspension* in January 2011 for delivering express mail to the wrong address; *a fourteen-day suspension* (later reduced to seven days after he filed a grievance) in June 2011 for scanning and certifying as delivered a package that was later found in the Wood Dale post office; and a *fourteen-day suspension* in February 2012 for failing to deliver a tub of priority mail before leaving for vacation. Agravante has put forth no evidence that would suggest that either Chuck Ventralla, LaTanya Rogers or Ed Scheriner had previously engaged in the number or types of infractions that Agravante had, such that they, too, should have been punished with more progressive discipline. In short, Agravante has failed to put forth evidence that suggests defendant's reason for subjecting him to harsher discipline than comparable employees was a pretext for sex or race discrimination.

Defendant is entitled to judgment as a matter of law on Count II. The Court grants defendant summary judgment on Count II. Defendant is entitled to judgment as a matter of law on the portion of Count I that alleges disparate treatment.

**B.    Agravante's harassment claim**

The other claim Agravante asserts in Count I is that he was subjected to a hostile environment on the basis of his race, in violation of Title VII of the Civil Rights Act of 1964.

An employer violates Title VII by subjecting an employee to harassment that is sufficiently severe or pervasive that it alters the terms and conditions of employment. Defendant

is liable for creating a hostile work environment if Agravante can show: "that [his] work environment was both objectively and subjectively offensive; (2) that the harassment was based on [his protected class]; (3) that the conduct was either severe or pervasive; and (4) that there is a basis for employer liability." *Vance v. Ball State Univ.*, 646 F.3d 461, 469 (7th Cir. 2011). In considering whether the environment is hostile, a court is to consider the "totality of the circumstances[,]" including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Ellis v. CCA of Tenn. LLC*, 650 F.3d 640, 647 (7th Cir. 2011) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)). In addition, to "qualify as a hostile work environment, the conduct at issue must be severe or pervasive enough to cause psychological injury." *Ellis*, 650 F.3d at 647.

In attempting to survive defendant's motion for summary judgment on his harassment claim, Agravante points to four instances he believes were humiliating. First, on one occasion, Puri told him not to wear his headphones when he could see that a white employee was wearing headphones. On two occasions, Puri raised her voice to Agravante and accused him of mishandling mail. Finally, on one occasion, Puri required Agravante to deliver more mail than other carriers. It is clear, judging plaintiff's evidence in its entirety, that no reasonable jury could conclude that Agravante was a victim of racial harassment. Not one of these instances was severe, and, together, they are not pervasive. Nor are they objectively offensive. Although raising one's voice to a subordinate wins no accolades, Title VII is not a general civility code. *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 81 (1998).

No reasonable jury could conclude that Agravante was subjected to an objectively hostile environment on the basis of his race. Defendant is entitled to judgment as a matter of law on Count I. The Court grants defendant summary judgment on Count I.

C. **Agravante's retaliation claim**

In Count III, Agravante claims that he was retaliated against in violation of Title VII. Defendant moves for summary judgment on this count as well.

Agravante first attempts to defeat summary judgment using the direct method of establishing retaliation. To establish retaliation under the direct method, Agravante must show: (1) he engaged in protected conduct; (2) he suffered a material, adverse action; and (3) a causal connection between the two. *Coleman v. Donahue*, 667 F.3d 835, 859 (7th Cir. 2012). "Causality is typically one of the highest hurdles retaliation plaintiffs must clear." *Benuzzi v. Board of Ed. of Chi.*, 647 F.3d 652, 665 (7th Cir. 2011). A Title VII retaliation claim requires "proof that the desire to retaliate was the but-for cause of the challenged employment action." *University of Texas Southwestern Medical Center*, 133 S.Ct. 2517, 2528 (2013).

Agravante has put forth evidence that he engaged in protected conduct a number of times during his tenure at the postal service. To begin with, in late 2009, Agravante provided a written statement in support of his co-worker's claim that Puri had discriminated against him on the basis of his race and sex. Next, after receiving a fourteen-day suspension in June 2011, Agravante filed an internal EEO complaint. Agravante has also put forth evidence of a causal connection between his EEO actions and his discipline. Specifically, Agravante has put forth (disputed) evidence that, at the mediation for his June 2011 EEO complaint, Puri stated that Agravante had "turned his back" on her when he wrote a letter of support for the co-worker's

EEO complaint. That evidence suggests that retaliation may have been the reason Puri approved the June 2011 suspension. A year later, Puri approved Collins's decision to discharge Agravante. Given that discipline at the postal service is progressive, the fact that retaliation may have been a factor in an earlier step means retaliation may have been the reason Agravante reached the discharge step sooner rather than later. This is evidence from which a reasonable jury could find for Agravante on his retaliation claim. Defendant argues that Puri did not make the comments at the July 2011 mediation, but that is a question for the jury. Defendant also argues that Puri was not the initial decision maker with respect to Agravante's discharge and that a year had passed between the mediation and the discharge. The jury may find those arguments compelling and render a verdict for defendant, but those are issues for the jury.

Defendant's motion for summary judgment is denied as to Count III.

## IV. Conclusion

For the reasons set forth above, the Court grants in part and denies in part defendant's motion for summary judgment. Defendant is granted summary judgment on Counts I and II.

ENTER:

_George M. Marovich_
George M. Marovich
United States District Judge

DATED: May 5, 2015